UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

V.R. ENTERTAINMENT, VICKASH MANGRAY,
JEFF MANGRAY, and MOONIE MANGRAY,

        Plaintiffs,

vs.

CITY OF ANN ARBOR, CITY OF ANN ARBOR
POLICE DEPARTMENT, CITY OF ANN ARBOR
CHIEF OF POLICE BARNETT JONES,
ANN ARBOR CITY ADMINISTRATOR STEVE
POWERS, and PREVIOUS CITY ADMINISTRATOR
ROGER FRASER, jointly and severally,

        Defendants.
_____/

Civil Action No.
12-cv-10203

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER
(1) STRIKING PLAINTIFFS' DUPLICATE PLEADING (Dkt. No. 14),
(2) STRIKING PLAINTIFFS' PLEADINGS THAT DO NOT CONFORM TO THE
LOCAL RULES (Dkt. Nos. 18 and 19),
(3) DENYING PLAINTIFFS' EX PARTE MOTION TO EXPAND PAGES (Dkt. No. 21),
and (4) DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
<u>TEMPORARY RESTRAINING ORDER (Dkt. No. 15)</u>**

V.R. Entertainment, Vickash Mangray, Jeff Mangray, and Moonie Mangray (collectively, "Plaintiffs") are the owners of a nightclub known as the Dream Nite Club, located in the City of Ann Arbor. On January 17, 2012, Plaintiffs filed a Complaint in this Court alleging civil rights violations arising under 42 U.S.C. § 1983 by the City of Ann Arbor and its Police Department, as well as Chief of Police Barnett Jones, Ann Arbor City Administrator Steve Powers, and previous Ann Arbor City Administrator Roger Fraser (collectively, "Defendants"). (Dkt. No. 1.)

1

On May 4, 2012, Plaintiffs filed two motions, one titled Motion for Preliminary Injunction and Temporary Restraining Order, and another titled Ex Parte Motion for Preliminary Injunction and Temporary Restraining Order. (Dkt. Nos. 14 and 15.) Aside from this difference in title, the motions were identical. Plaintiffs' counsel has made no effort to withdraw the duplicate motion or otherwise correct the docket. Accordingly, in the interest of maintaining docket efficiency, the Court will strike Plaintiffs' duplicate Motion for Preliminary Injunction and Temporary Restraining Order (Dkt. No. 14).

In their Motion, Plaintiffs ask the Court to order the Ann Arbor City Counsel to reverse its decision of March 19, 2012, to recommend against renewal of the Dream Nite Club's liquor license, and also ask the Court to order the Michigan Liquor Control Commission ("MLCC") to restore the liquor license. The MLCC is not a party in this case.

The Court held a hearing on May 4, 2012. Plaintiffs and their counsel were present, and Defendants' counsel appeared by phone. After hearing oral argument from the parties, the Court declined to enter an immediate temporary restraining order and requested further, expedited briefing from both parties. Defendants filed a Response on May 9, 2012 (Dkt. No. 16), and Plaintiffs filed two documents, both titled "Plaintiff's Response to Defendant's Answer." (Dkt. Nos. 18 and 19.) Plaintiffs subsequently amended docket entry 19 to clarify that it is a reply to a response. However, Plaintiffs failed to withdraw their apparently mistakenly filed Response at docket entry 18. Accordingly, in the interest of docket efficiency, and because the Local Rules do not allow a party to file a response to its own motion, the Court will strike docket entry 18.

The Court further notes that Plaintiffs' Reply does not comport with the local rules because it is 21 pages long, and a reply is limited to five pages. See E.D. Mich. LR 7.1(d)(3)(B). In their Ex

2

Parte Motion to Expand Pages, filed on May 16, 2012 (Dkt. No. 21), Plaintiffs argue that, because of issues raised by Defendants in their Response, and because of new facts and circumstances since the filing of the original Motion on May 4, 2012, Plaintiffs required more than five pages to reply. The Court finds that the arguments raised by Defendants in their Response do not warrant a 21-page reply brief. Further, the facts surrounding the non-renewal of the Dream Nite Club's liquor license have been adequately briefed in Plaintiffs' initial 26-page Motion and Defendants' 20-page Response. Accordingly, the Court will deny Plaintiffs' Ex Parte Motion to Expand Pages, and will strike Plaintiffs' Reply.

## I. BACKGROUND

The following facts detail the pertinent background of the instant Motion.

Defendants have brought three nuisance actions in Michigan state court against Plaintiffs, alleging that the Dream Nite Club is a nuisance due to numerous police incidents inside the nightclub, and in the area immediately surrounding the nightclub. The first two nuisance actions were voluntarily dismissed, but a third action is currently pending in a Washtenaw County, Michigan, trial court.

On February 23, 2012, the Ann Arbor Liquor License Review Committee approved a recommendation for non-renewal of the Dream Nite Club's liquor license. The recommendation was accepted by the full Ann Arbor City Council on March 5, 2012, and an administrative hearing was set for March 19, 2012. A notice regarding this administrative hearing was mailed to Plaintiffs on March 7, 2012.

On March 19, 2012, Plaintiffs appeared at the administrative hearing represented by counsel. Ann Arbor City Council member Tony Derezinski served as the hearing officer. At the hearing, the

City of Ann Arbor produced 10 police officers as witnesses to various violent incidents that involved the Dream Nite Club or its patrons. Plaintiffs' counsel cross examined the police officers, and specifically pointed out that most of the testimony the officers gave was based on hearsay accounts from patrons of the Dream Nite Club. Prior to concluding the hearing, Councilman Derezinski heard closing argument from the City of Ann Arbor's attorney and Plaintiffs' counsel. The hearing lasted more than four hours.

Following the hearing, Councilman Derezinski prepared a report recommending non-renewal of the Dream Nite Club's liquor license. At its regular meeting on March 19, 2012, the City Council passed a resolution adopting Councilman Derezinski's recommendation and objecting to the renewal of the Dream Nite Club's liquor license. Plaintiffs attended this meeting, but did not make any public comment.

On April 2, 2012, Plaintiffs filed a complaint in a Michigan state court against the City of Ann Arbor and the MLCC. (Defs.' Resp. Ex. 26, State Court Compl.) On April 17, 2012, Plaintiffs filed an Amended Complaint requesting injunctive relief to prevent the non-renewal of the Dream Nite Club's liquor license. (Defs.' Resp. Ex. 27, Am. State Court Compl.) At the May 4, 2012 hearing on the instant Motion for Preliminary Injunction and Temporary Restraining Order, Plaintiffs' counsel admitted that Plaintiffs had previously sought, and were denied, a temporary restraining order and injunction in the state court action.

On April 30, 2012, the MLCC held a show cause hearing, at which Plaintiffs appeared with counsel. The MLCC ordered that the liquor license not be renewed. The Dream Nite Club's liquor license thus expired on April 30, 2012.

Now before the Court is Plaintiffs' Motion for Preliminary Injunction and Temporary

4

Restraining Order, filed on May 4, 2012.

## II. ANALYSIS

### A. Supplemental Jurisdiction

Plaintiffs' claims regarding the review of a local legislative body's action regarding non-renewal of a liquor license may be brought in a Michigan state court. In *Bisco's, Inc. v. Michigan Liquor Control Commission*, 395 Mich. 706 (Mich. 1976), the Michigan Supreme Court held "that arbitrary and capricious actions by local legislative bodies in recommending to the [MLCC] that liquor licenses not be renewed are subject to judicial review . . . ." *Id.* at 710. Indeed, Plaintiffs admit that they have attempted to avail themselves of this relief via a temporary restraining order filed in their state-court action against Defendants and the MLCC.

Pursuant to 28 U.S.C. § 1367, this Court has discretion to exercise supplemental jurisdiction over state law claims. *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Thus, to the extent that Plaintiffs' claims are based on state-law causes of action, or arise out of the arbitrary and capricious actions of the Ann Arbor City Council, the Court declines to exercise supplemental jurisdiction, because those claims are duplicative of claims already made in the state-court action brought by Plaintiffs.

### B. Federal Claims

The Court will address Plaintiffs' motion to the extent that it raises federal due process claims arising under 42 U.S.C. § 1983.

Federal Rule of Civil Procedure 65(b) empowers the Court to issue a temporary restraining order and/or a preliminary injunction only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant . . ."

In determining whether to issue a temporary restraining order, the Court considers four factors: (1) the likelihood of Plaintiffs' success on the merits; (2) whether the injunction will save Plaintiffs from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).

*1. Likelihood of Success on the Merits*

As an initial matter, the Court notes that Plaintiffs cannot demonstrate any likelihood of success on the merits as to the MLCC, as Plaintiffs have not stated any claims against the MLCC in this federal action, and the MLCC is not a party to this case.

Regarding Defendant Ann Arbor City Council, Plaintiffs claim that they were not afforded adequate due process. Plaintiffs claim that they were entitled to notice and an opportunity to be heard at the March 5, 2012 City Council meeting, that the March 5, 2012 hearing did not comply with substantive due process standards, and that the non-renewal hearing lacked clear evidentiary standards.

Procedural due process requires a state to provide notice and an opportunity to be heard prior to the termination of a protected interest. *See Crump v. Lafler*, 657 F.3d 393, 397 (6th Cir. 2011). The March 5, 2012 City Council meeting only involved setting a hearing date regarding the non-renewal of the Dream Nite Club's liquor license. It did not, therefore, involve the termination of any protected interest held by Plaintiffs. Defendants did not terminate any of Plaintiffs' protected interests until after the March 19, 2012 hearing, at which Plaintiffs were permitted to appear and present their arguments against non-renewal of the liquor license. Accordingly, Plaintiffs are not likely to be successful on their claims that they did not receive adequate due process prior to the recommendation to terminate the liquor license.

Plaintiffs argue that Councilman Derezinski should not have been permitted to vote on the decision to hold a non-renewal hearing at the March 5, 2012 Ann Arbor City Council meeting. However, as noted *supra*, because the March 5, 2012 meeting did not affect any of Plaintiffs' substantive rights, and only set a date for the non-renewal hearing at which Plaintiffs and their counsel appeared, Plaintiffs cannot claim that the March 5, 2012 hearing violated their due process rights.

Plaintiffs also argue that the non-renewal hearing violated due process because it did not have a clearly stated evidentiary standard. "The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (holding that a decision affecting a prisoner's liberty interest in good time credits must be supported by "some evidence"). At the March 19, 2012 hearing the City Council presented evidence through the testimony of numerous police officers. The transcript, attached to Plaintiffs' Motion as Exhibit D, reflects that the decision to recommend non-renewal of the liquor license was supported by some evidence.

Accordingly, Plaintiffs have not demonstrated that they are likely to be successful on the merits of their due process claims.

2. *Irreparable Injury*

Plaintiffs argue that they will be irreparably harmed if an injunction is not granted because their reputation and goodwill with the community will be damaged, and because they will lose profits.

"[L]oss of established goodwill may irreparably harm a company." *Michigan Bell Telephone Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001). However, Plaintiffs still must carry their burden

of persuasion before the Court can grant an extraordinary remedy in the form of injunctive relief. *Stenberg v. Checker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Plaintiffs have not presented any evidence that they have established goodwill in the community that will be irreparably harmed by closure.

Furthermore, Plaintiffs' lost profits are not a sufficient basis for injunctive relief. "[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Accordingly, Plaintiffs have failed to establish irreparable harm in the absence of an injunction.

*3. Harm to Others and the Public Interest*

Plaintiffs' motion does not address the last two factors in the *In re DeLorean* analysis. However, Defendants have presented several police reports, and an affidavit from an individual who was injured during an altercation at the Dream Nite Club, that document several violent incidents in and around the nightclub. (Defs.' Resp. Exs. 10-16, 33.) Accordingly, the Court finds that the harm to others and public interest factors weigh against granted injunctive relief.

The Court therefore finds that Plaintiffs have failed to establish that any of the four *DeLorean* factors weigh in their favor. Accordingly, Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order is **DENIED**.

SO ORDERED.

Dated: 5-18-12  
Detroit, Michigan

PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE